Slip Op. 18-39

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INTERNATIONAL INDUSTRIES, LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> WHEATLAND TUBE COMPANY, BULL MOOSE TUBE COMPANY, <br><br> Defendant-Intervenors. | Before: Mark A. Barnett, Judge <br> Court No. 17-00010 |

## **OPINION**

[Plaintiff's motion for judgment on the agency record is denied.]

Dated: April 9, 2018

R. Will Planert, Morris, Manning & Martin LLP, of Washington, DC, argued for Plaintiff. With him on the brief were Julie C. Mendoza, Donald B. Cameron, Brady W. Mills, Mary S. Hodgins, Eugene Degnan, and Sarah S. Sprinkle.

Nataline Viray-Fung, Attorney, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, argued for Defendant. With her on the brief were Dominic L. Bianchi, General Counsel, and Andrea C. Casson, Assistant General Counsel for Litigation.

John W. Bohn, Schagrin Associates, of Washington, DC, argued for Defendant-Intervenors. With him on the brief was Roger Schagrin.

Barnett, Judge: Plaintiff International Industries, LTD ("Plaintiff" or "IIL") moves, pursuant to United States Court of International Trade ("USCIT") Rule 56.2, for judgment on the agency record, challenging the United States International Trade Commission's ("ITC" or "Commission" or "Defendant") determination that circular welded carbon-quality steel pipe ("CWP") imports from Pakistan are eligible for cumulation with CWP imports from Oman and the United Arab Emirates ("UAE").[1] *See* Confidential Mot. of Pl. International Industries, Ltd. for J. Upon the Agency R. ("Pl.'s Mot."), ECF No. 30; *Circular Welded Carbon-Quality Steel Pipe from Oman, Pakistan, the United Arab Emirates, and Vietnam*, 81 Fed. Reg. 91,199 (ITC Dec. 16, 2016) (final determinations) ("*ITC Final Determination*")[2]; *Circular Welded Carbon-Quality Steel Pipe from Oman, Pakistan, the United Arab Emirates, and Vietnam, Confidential Final Consolidated Staff Report and Views*, Inv. Nos. 701-TA-549 and 731-TA-1299-1300, 1302-1303 (Final) (Dec. 2016), CR 398, ECF No. 20-1.[3] Plaintiff challenges the Commission's determination as unsupported by substantial evidence and otherwise not in accordance with law. Confidential Br. of Pl. International Industries, Ltd. in Supp. of

---

[1] Defendant filed the confidential administrative record ("CR") at ECF No. 20 and the public administrative record ("PR") at ECF No. 21. The parties also submitted joint appendices containing record documents cited in their briefs. *See* Confidential Joint App. ("CJA"), ECF No. 47; Public Joint App. ("PJA"), ECF No. 48. The Court references the confidential versions of the relevant documents, unless otherwise specified.

[2] The Commission found imports of CWP from Vietnam to be negligible and, therefore, those imports are not at issue in this case. *ITC Final Determination*, 81 Fed. Reg. at 91,199.

[3] The *Confidential Final Consolidated Staff Report and Views*, to which the court cites throughout this opinion, is divided into three sections: (1) Views of the Commission, (2) Dissenting Views of Commissioners Pinkert, Broadbent, and Kieff with Respect to Less-Than-Fair-Value Imports from Pakistan; and (3) Staff Report. *See* ECF No. 20-1. For ease of reference, the court will cite to these sections respectively, as *Views*, *Dissenting Views*, or *Staff Report*.

its Mot. for J. on the Agency R. ("Pl.'s Br.") at 2, ECF No. 30-1.  Specifically, Plaintiff argues that the Commission lacked substantial evidence to support its finding that there was a reasonable overlap between CWP from Pakistan and other CWP, that the Commission did not adequately address Plaintiff's arguments, and that any competition between CWP from Pakistan and other CWP was attenuated.  See Pl.'s Mot. at 1-2; Pl.'s Br. at 2-3; *see also* Confidential Reply of Pl. International Industries, Ltd. ("Pl.'s Reply") at 2, ECF No. 44.  Defendant and Defendant-Intervenors support the ITC's cumulation determination.  See Confidential Resp. of Def-Ints. Wheatland Tube Co. and Bull Moose Tube Co. to Pl.'s Mot. for J. on the Agency R. Under USCIT Rule 56.2 ("Def.-Ints.' Resp."), ECF No. 32; Confidential Def. United States International Trade Commission's Mem. in Opp'n to Pl.'s Mot. for J. on the Agency R. ("Def.'s Resp."), ECF No. 42.  For the reasons discussed below, the Court denies Plaintiff's motion for judgment on the agency record.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012),[4] and 28 U.S.C. § 1581(c) (2012).  The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

---

[4] Further citations to the Tariff Act of 1930, as amended are to the relevant portions of Title 19 of U.S. Code, 2012 edition.

## DISCUSSION

### I.   Legal Standard for Cumulation

The Commission is required to "cumulatively assess the volume and effect of imports of the subject merchandise from all countries" when, as here, petitions are filed on the same day "if such imports compete with each other and with domestic like products in the [U.S.] market." 19 U.S.C. § 1677(7)(G)(i); *Views* at 20 (stating the date of petitions). To determine whether imports compete with each other and with the domestic like product, the Commission analyzes four factors:

> (1) the degree of fungibility between subject imports from different countries and between subject imports and the domestic like product, including consideration of specific customer requirements and other quality related questions;
>
> (2) the presence of sales or offers to sell in the same geographic markets of subject imports from different countries and the domestic like product;
>
> (3) the existence of common or similar channels of distribution for subject imports from different countries and the domestic like product; and
>
> (4) whether the subject imports are simultaneously present in the market.

*Views* at 20 (citation omitted). This court and the U.S. Court of Appeals for the Federal Circuit ("CAFC") have approved the Commission's use of these criteria for determining whether competition exists between and among subject imports and the domestic like product. *See Goss Graphics Sys., Inc. v. United States*, 22 CIT 983, 985, 33 F. Supp. 2d 1082, 1085 (1998), *aff'd*, 216 F.3d 1357, 1361 (Fed. Cir. 2000); *see also Fundicao Tupy S.A. v. United States*, 12 CIT 6, 10-11, 678 F. Supp. 898, 902 (1988) (summarizing the factors as "the fungibility and similar quality of the imports, the similar channels of distribution, the similar time period involved, and the geographic overlap of

the markets"), *aff'd,* 859 F.2d 915 (Fed. Cir. 1988).[5]  No one factor in the Commission's analysis is determinative.  *Noviant OY v. United States*, 30 CIT 1447, 1461, 451 F. Supp. 2d 1367, 1379 (2006).  Moreover, the Commission need only find that a "reasonable overlap" of competition exists; a finding of "'complete overlap' of competition" is not required to support a cumulation decision.  *Mukand Ltd. v. United States*, 20 CIT 903, 909, 937 F. Supp. 910, 916 (1996) (quoting *Wieland Werke, AG v. United States*, 13 CIT 561, 563, 718 F. Supp. 50, 52 (1989)); *see also Goss Graphics*, 216 F.3d at 1362 (stating that the ITC's inquiry is "whether 'reasonable overlap' of competition exists.").

## II.   The Commission's Determination

The Commission's determination to cumulate subject imports from Pakistan with imports from Oman and the UAE was by a divided vote of the six-member Commission.[6]  For purposes of its material injury analysis, the Commission cumulated

---

[5] Similarly, Congress has approvingly cited the Commission's criteria for evaluating whether there is competition sufficient to warrant cumulation.  *See* Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol.1 at 848 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4182 ("SAA") ("The new section [1677(7)(G)(i)] will not affect current Commission practice under which the statutory requirement is satisfied if there is a reasonable overlap of competition, based on consideration of relevant factors.") (citing *Fundicao Tupy*, 678 F. Supp. at 902). The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

[6] Three Commissioners did not cumulate subject imports from Pakistan with imports from Oman and the UAE and separately analyzed those imports. *Views* at 3 n.1, 22 n.66; *see also Dissenting Views*.  The dissenting Commissioners found no material injury or threat of material injury to a U.S. industry by reason of CWP imports from Pakistan. *Views* at 3 n.1.  Pursuant to 19 U.S.C. § 1677(11), "[i]f the Commissioners voting on a determination by the Commission . . . are evenly divided as to whether the determination should be affirmative or negative, the Commission shall be deemed to have made an affirmative determination."  19 U.S.C. § 1677(11).

subject imports from Pakistan, Oman, and the UAE because it found a "reasonable overlap in competition" among imports from those countries and between those imports and the domestic like product.  *Views* at 26.  The Commission found that the record indicates a geographic overlap in the presence of sales of the CWP imports from Oman, Pakistan, the UAE, and the domestic like product; that there is an overlap in channels of distribution for imports from the subject countries and the domestic like product; that the imports from each subject country were simultaneously present in the U.S. market; and that the imports from the subject countries and the domestic like products are fungible. *Views* at 22-26.  Plaintiff challenges only the ITC's findings with respect to the fungibility analysis; it does not challenge the Commission's methodology or its findings related to the remaining factors.  *See generally* Pl.'s Br.; Pl.'s Reply at 3.

### III. Substantial Evidence Supports the Commission's Decision to Cumulate Imports from Pakistan

Plaintiff argues that the Commission's determination is unsupported by substantial evidence because CWP imports from Pakistan constituted a very small percentage share of the total U.S. market and were confined to a small segment — fence tubing — of the overall U.S. market.  Pl.'s Br. at 21-24.  Plaintiff asserts that the Commission failed to articulate whether it based its cumulation decision on competition in the fence tubing segment or the CWP market as a whole.  *Id.* at 20; Pl.'s Reply at 4. Plaintiff further argues that the Commission failed to address Plaintiff's arguments that the lack of hydrostatic testing, certification pursuant to the American Society for Testing and Materials International ("ASTM") standards, and lead-free certification pursuant to the Safe Drinking Water Act confined Pakistani CWP to the fence tubing submarket. Pl.'s Br. at 31.  Plaintiff further argues that the Commission "ignored" evidence that,

even within the fence tubing segment, competition between Pakistani imports and the domestic like product was "significantly attenuated" due to quality and specification differences. *Id*. at 34-40.

Because Plaintiff only challenges the Commission's fungibility determination, the court's analysis is confined to this issue. The Commission "need only find a reasonable overlap of fungibility to support its competition finding." *Noviant OY*, 30 CIT at 1461, 451 F. Supp. 2d at 1379 (quoting *Mukand,* 20 CIT at 909, 937 F. Supp. at 910). Here, the Commission found "at least moderate interchangeability among imports from Oman, Pakistan and the UAE and between the imports from each of those sources and the domestic like product." *Views* at 23. Contrary to Plaintiff's arguments that Pakistani CWP is not fungible with other imported and domestic like products, substantial evidence on the record supports the Commission's determination of a reasonable degree of fungibility between CWP from Pakistan, the other subject sources and the domestic like product.

Questionnaire responses from market participants regarding interchangeability of CWP imports from Pakistan, Oman, the UAE and domestically produced CWP support a finding of fungibility among these products. During its investigation, the Commission asked market participants to explain whether imported CWP from the subject countries and domestically produced CWP is "always, frequently, sometimes, or never" interchangeable. *Staff Report* at II-32. Substantial numbers of responding domestic producers, importers, and purchasers reported that CWP from Oman, Pakistan, and the

UAE was "always" or "frequently" interchangeable with other subject merchandise or the domestic like product. *See Staff Report* at Table II-10.[7]

The Commission further observed that,

> of the five purchasers that purchased both subject imports from Pakistan and domestically produced product, [some] indicated that subject imports from Pakistan and the domestic like product were sometimes interchangeable, and [some] indicated they were always or frequently interchangeable. [Some of the] four purchasers that provided responses concerning subject imports from Pakistan and other subject imports stated that such imports were always or frequently interchangeable.

*Views* at 25 (citing questionnaire responses).

Moreover, purchaser comparisons across countries provide additional support for the Commission's finding of fungibility. The Commission asked purchasers to compare CWP produced in the United States with CWP produced in the subject countries using 14 non-price characteristics. *Staff Report* at II-27, Table II-9. A majority of the responding purchasers indicated CWP from Pakistan was comparable in half of the non-price characteristics with CWP from the United States,[8] and a majority also

---

[7] Specifically, the comparison data on domestically produced CWP and Pakistani imported CWP showed that out of the [[   ]] responding U.S. producers, [[   ]] reported that these products were always interchangeable and [[   ]] reported that they were frequently interchangeable. *See* Staff Report at Table II-10. Out of the [[   ]] responding U.S. importers, [[   ]] stated that the products were always interchangeable while [[   ]] stated they were frequently interchangeable, and two reported they were sometimes interchangeable. *Id.* Eight of the U.S. purchasers reported that Pakistani CWP was sometimes interchangeable with the domestic like product, six reported that those products were always interchangeable, one reported that they were frequently interchangeable, while only one reported that they were never interchangeable. *Id.*

[8] Purchasers indicated that domestically produced CWP was comparable to CWP produced in Pakistan with regard to: discounts offered, extension of credit, packaging, quality meeting industry standards, quality exceeding industry standards, reliability of supply, and domestic transportation costs. Table II-9.

indicated CWP from Pakistan was comparable in almost all the non-price characteristics with CWP from Oman and the UAE. See Table II-9.[9]

These questionnaire responses containing views of market participants provide substantial evidence to support the Commission's finding of a reasonable overlap in terms of fungibility. See Noviant OY, 30 CIT at 1461, 451 F. Supp. 2d at 1379. Plaintiff seeks to cast doubt on the credibility of the questionnaire responses because of alleged "ambiguities and contradictions" in the responses. Pl.'s Br. at 27-30. For example, Plaintiff avers that although the company that purchased a significant quantity of CWP from Pakistan rated that product as comparable with other subject imports and the domestic like product, it had no actual marketing or pricing knowledge of domestically produced CWP, and the company purchased only small quantities from some countries. Id. at 28 n.10. Regarding the other purchasers, Plaintiff points to their responses either indicating lack of knowledge of Pakistani products or the low purchase volume of Pakistani products. See id. at 29-30.

"As the principal fact-finder, the ITC is afforded considerable discretion in evaluating information obtained from questionnaires." NSK Corp. v. United States, 32 CIT 966, 978, 577 F. Supp. 2d 1322, 1336-1337 (2008). Consistent with this discretion,

---

[9] In fact, a company that purchased a significant quantity of CWP from Pakistan and indicated it had actual marketing and pricing knowledge of CWP from Pakistan and UAE rated Pakistani CWP as "comparable" with the subject merchandise from the UAE and the domestic like product in <u>all</u> of the non-price characteristics, except one. Compare [[           ]] ("[[     ]]") U.S. Purchasers' Questionnaire Resp. ("[[     ]] QR") at Question II-1 (indicating purchase quantities), CJA Tab 8, CR 135, PJA Tab 8, ECF No. 47 with Staff Report at Tables IV-2 & C-1 (indicating U.S. imports by source); [[     ]] QR at Questions IV-1 (indicating country knowledge), and IV-7 (providing country comparisons based on the 14 non-price characteristics); see also Pl.'s Br. at 28 n.10 (noting that "[[     ]] purchased a significant quantity of CWP from Pakistan.").

Case 1:17-cv-00010-MAB    Document 63    Filed 04/17/18    Page 10 of 16

Court No. 17-00010    Page 10


"[c]ertain decisions, such as the weight to be assigned a particular piece of evidence, lie at the core of that evaluative process." *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996). The court finds no reason to second guess the ITC's evaluation of the credibility of the questionnaire responses. Plaintiff offers no reasoning or evidence to suggest that a customer must actually purchase significant quantities of a competing product before being qualified to offer views on that product. In short, the Commission chose to credit responses from companies that did not purchase comparable amounts of CWP from Pakistan and Plaintiff offers no reason for this court to disturb that decision.[10]

Pricing data also support a finding of competition among the imports and with the domestic like product. The Commission requested U.S. producers and importers to provide quarterly pricing data for four specific CWP products. *Staff Report* at V-5-V-6. Pricing product 4 was defined as "schedule 40 galvanized fence tube, with nominal outside diameter of 1-1/4—3 inches, inclusive," which is fence tubing. *Staff Report* at V-6; *see also Views* at 25 n.81 (stating that pricing product 4 "is, by definition, fence tubing.").[11] A majority of CWP imports from Pakistan were in the fence tubing category (pricing product 4), see *Staff Report* at Tables V-3-V-6; U.S. producers and importers

---

[10] The court recognizes that some purchasers of CWP from Pakistan and other sources indicated that they did not have marketing and pricing knowledge about CWP from Pakistan, notwithstanding their purchases. See [[                    ]] QRs at Questions II-1 and IV-1. Again, it is not the court's role to "reweigh the evidence." *Usinor,* 28 CIT at 1111, 342 F. Supp. 2d at 1272.

[11] Pricing product 1 was "ASTM A-53 schedule 40 black plain-end, with nominal outside diameter of 2-4 inches inclusive"; pricing product 2 was "ASTM A-53 schedule 40 galvanized plain-end, with nominal outside diameter of 2-4 inches inclusive"; pricing product 3 was "ASTM A-53 schedule 40 black plain-end, with nominal outside diameter of 6-8 inches inclusive." *Staff Report* at V-5-V-6

reported sales in this product from the United States, the UAE, and, in much smaller quantities, Oman. *See Staff Report* at Tables V-6.[12] Plaintiff contends that its sole customer reported pricing data only in pricing product 4, Pl.'s Br. at 6; thus, the record shows that *all* of Plaintiff's CWP imports compete with imports from Oman, the UAE, and domestic like product in pricing product 4. *See* Table V-6;[13] *see also* Oral Arg. at 11:20-13:23. In addition, "there were multiple quarterly pricing observations of the domestic like product and subject imports from Oman, Pakistan, and the UAE with respect to products 1, 2, and 4 sold to distributors." *Views* at 26; *see also Staff Report* at Tables V-3-4, V-6.[14]

---

[12] Additionally, with respect to fence tubing, the *Staff Report* states that "[m]ost U.S. producers and importers reported that their sales of pricing product 4 were not produced to ASTM standards." *Staff Report* at V-6 n.11.

[13] Citations to the oral argument reflect time stamps from the recording. At oral argument, counsel for the Plaintiff stated that "there's no question there is some competition" within the fence tubing submarket. Oral Arg. at 11:17-11:20.

[14] Connectors, Inc. ("Connectors"), Plaintiff's sole U.S. customer, reported pricing data only for pricing category 4 (fence tubing) from Pakistan. Connectors, Inc.'s U.S. Importers' Questionnaire Resp. at III-2a, CJA Tab 19, CR 274, PJA Tab 19, ECF No. 47. In addition to Connectors, however, another importer, [[         ]] , reported that it imported a total of [[  ]] short tons of products 1-3 from Pakistan during the POI. *See Staff Report* at Tables V-3-V-5; [[           ]] U.S. Importers' Questionnaire Resp. at III-2a, CJA Tab 15, CR 189, PJA Tab 15, ECF No. 47. Plaintiff classifies this as a "reporting error" and a "mistake" because IIL's CEO testified that, to the best of his knowledge, IIL is the only producer of CWP that is capable of exporting to the United States, and IIL sells exclusively to Connectors. Pl.'s Br. at 6 n.4. Pursuant to 19 C.F.R. § 207.3(a), a person submitting a response to a Commission questionnaire on behalf of an interested party "must certify that such information is accurate and complete to the best of the submitter's knowledge." 19 C.F.R. § 207.3(a). The Commission, therefore, reasonably chose to rely on this certified response instead of inferring a reporting error. *Cf. JMC Steel Grp. v. United States*, 38 CIT __, __, 24 F. Supp. 3d 1290, 1319 (2014) (holding that the Commission properly relied on limited questionnaire responses, as opposed to "infer[ring] the existence of additional excess capacity," as the plaintiff had suggested).

Plaintiff suggests that the Commission did not adequately articulate whether it based its fungibility determination on the interchangeability of CWP from Pakistan and from other sources in the fence tubing market alone or in the CWP market as a whole. *See* Pl.'s Reply at 4. Plaintiff's argument is inapposite. The Commission found that there is a reasonable overlap of fungibility between and among the subject imports (including CWP from Pakistan) and the domestic like product. The Commission articulated that

> [t]he lack of ASTM certification of most subject imports from Pakistan does not preclude it from being used in the same applications as the domestic like product and subject imports from Oman and the UAE. CWP from each of these sources is used for fence tubing, which is the primary application for subject imports from Pakistan asserted by the Pakistan respondent.

*Views* at 25. Thus, the Commission understood that most Pakistani CWP was used for fence tubing and found sufficient fungibility between it and other CWP. The reasonable overlap standard does not require overlap in every market segment and Plaintiff does not dispute the existence of overlap in the fence tubing segment.

Plaintiff cites the *Dissenting Views* in support of its argument that because its imports "were relegated to a very small portion of the U.S. market for CWP," they are not eligible for cumulation. *See* Pl.'s Br. at 22 (quoting *Dissenting Views* at 34-35). Plaintiff concedes, however, that the Commission need not find competition across the entire market. Pl.'s Reply at 11. Here, the Commission's determination that CWP from Pakistan is fungible with CWP from other subject countries and domestically produced CWP is supported by substantial evidence. That some Commissioners reached diverging conclusions based on the record evidence "does not prevent [the Commission's] finding from being supported by substantial evidence." *Siemens Energy,*

*Inc. v. United States*, 806 F.3d 1367, 1372 (Fed. Cir. 2015) (quoting *Consolo*, 383 U.S. at 620); *see also Grupo Indus. Camesa v. United States*, 85 F.3d 1577, 1582 (Fed. Cir. 1996) ("Although [appellant] points to evidence supporting the dissenting commissioners' decision that the domestic industry was not materially injured, this does not mean that the Commission's affirmative determination is unsupported by substantial evidence.").

Plaintiff argues that competition by Pakistani CWP is attenuated by the fact that its CWP is not certified to ASTM standards. The Commission acknowledged that CWP from Pakistan generally lacked ASTM certification, whereas a majority of CWP imported from other subject countries was made to the ASTM A53 standard. *Views* at 24. Nonetheless, the Commission found this difference inconsequential in its fungibility analysis. *Id.* The Commission reasoned that "CWP from Pakistan is marketed as having equivalent qualities and being generally manufactured to ASTM A53-A standards." *Id.* (citing Revised and Corrected Hr'g Tr. (Nov. 17, 2016) ("Hr'g Tr.") at 137, CJA Tab 32, PJA Tab 32, PR 210, ECF No. 47). Substantial evidence supports this finding. The vice president of IIL's U.S. distributor, Connectors, testified at the hearing that IIL's mill certificate states that IIL's pipe "is generally *manufactured to* the ASTM A53-A spec." Hr'g Tr. at 136-37.[15] Although this witness qualified his testimony to state that despite the mill certification, IIL's pipe "is suitable for use only in commercial fence pipe," *id.* at 137, the Commission was entitled to rely and had record support for its reliance on the witness's testimony. *See* IIL's Post-Hr'g Br., Ex. 11, CJA

---

[15] IIL was the only Pakistani producer of CWP to respond to the Commission's questionnaire, and amounted for [[   ]] percent of importers' U.S. shipments of CWP from Pakistan during the POI. Pl.'s Br. at 22.

Tab 24, CR 345, PJA Tab 24, PR 180, ECF No. 47.  As the Commission observed, a majority of responding purchasers reported that Pakistani CWP was comparable to the other subject imports and domestic like product in the "quality meeting industry standards" category.  *Views* at 24-25; Table II-9.[16]  Record data supported the Commission's conclusion that CWP from Pakistan is manufactured to similar end finishes, surface finishes, lengths, and thicknesses as CWP from other subject sources and the domestic industry.  Views at 25-26 & n.84 (*citing* Staff Report Tables IV-7-9).  Moreover, while there were differences between Pakistani CWP and other CWP with regard to the lead free certifications, the Commission found that the lack of such a certification was not a factor in most customers' purchasing decisions.  Views at 24.  The fact that a significant minority of customers reported that such a certification was very or somewhat important, and that the Commission minority chose to credit their responses, Dissenting Views at 35 n.11, does not detract from the substantial evidence supporting the Commission's finding.  *See Siemens Energy, Inc.*, 806 F.3d at 1372.

Plaintiff avers that the Commission failed to address its arguments that the lack of ASTM certification, hydrostatic testing, and compliance with lead free standards in the Safe Drinking Water Act all confined its CWP solely to the fencing sector of the market.  Pl.'s Br. at 35.  Plaintiff avers the Commission "ignored" record evidence demonstrating differences in specification and quality between Pakistani fence tubing and domestically produced fence tubing.  *See* Pl.'s Br. at 34-40.[17]  The court disagrees.

---

[16] Moreover, evidence from the domestic industry showed that [[
]] .  *Views* at 25 (citing Pet'rs' Post-Hr'g Br. at 23 & Ex. 11, CJA Tab 23, CR 344, PJA Tab 23, PR 181, ECF No. 47).

[17] Plaintiff acknowledges that "[i]n responding to a question from the Commission regarding the possible applicability of the [CAFC's] decision in *Bratsk Aluminium*

"[T]he Commission shall include in a final determination of injury an explanation of the basis for its determination that addresses relevant arguments that are made by interested parties who are parties to the investigation or review (as the case may be) concerning volume, price effects, and impact on the industry of imports of the subject merchandise." 19 U.S.C. § 1677f(i)(3)(B). In so doing, the Commission must specifically reference arguments that are material and relevant or "provide a discussion or explanation in the determination that renders evident the agency's treatment of a factor or argument." SAA at 892, *reprinted in* 1994 U.S.C.C.A.N. at 4215-4216; *see also id.* ("Existing law does not require that an agency make an explicit response to every argument made by a party, but instead requires that issues material to the agency's determination be discussed so that the 'path of the agency may reasonably be discerned' by a reviewing court) (citing *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987); *Nat'l Ass'n of Mirror Mfrs. v. United States,* 12 CIT 771, 780, 696 F. Supp. 642, 649 (1988)).

The Commission explicitly considered Plaintiff's arguments that CWP imports from Pakistan are not substitutable with other CWP because they are used only as fence tubing, are not certified to ASTM A53 standards and are not certified lead free

---

*Smelter v. United States*, 444 F.3d 1369 (Fed. Cir. 2006), to this investigation, IIL . . . stated that CWP from *most import* sources is physically interchangeable with domestic CWP"; however, it "then expressly confirmed that CWP from Pakistan was an exception to this general statement" because "CWP from Pakistan 'is not generally substitutable with domestic standard pipe [due to] the lack of ASTM certification.'" Pl.'s Br. at 33 (citing IIL's Post-Hr'g Br. at 54 & n.161). The court finds that when the *Views* are read in their entirety, the Commission was aware that Pakistani CWP generally was not certified to ASTM standards and that such pipe could only be used as fence tubing. The record contains substantial evidence supporting the Commission's findings of a reasonable overlap in competition and that finding is sufficiently discernible from the *Views* such that remand is unnecessary.

under the Safe Drinking Water Act. *Views* at 21 & nn.62-63 (citing Confidential IIL's Pre-Hr'g Br. at 33-35, CJA Tab 21, CR 314, PJA Tab 21, PR 147, ECF Nos. 47, 53-1); *see also id.* at 24-25 (discussing the impact of Pakistani CWP's lack of ASTM and lead-free certifications in its reasoning and conclusions). The Commission also considered Plaintiff's argument that Pakistani fence tubing is not interchangeable with domestic fence tubing because "domestically produced pipe which competes with Pakistan subject imports" is produced to higher standards. *Views* at 22 (citing Confidential IIL's Pre-Hr'g Br. at 36-37). The Commission's reference to the relevant pages of Plaintiff's pre-hearing brief and its substantive analysis of the fungibility issue indicates that the Commission understood and addressed Plaintiff's arguments and evidence. As discussed by the Commission, although subject imports from Pakistan "generally lack ASTM certification and are perceived somewhat differently by purchasers than the domestic like products" the record nonetheless indicates sufficient overlap of customers and uses between the subject imports from Pakistan and the domestic like product, "as well as some perceptions of interchangeability and comparability." *Views* at 26.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for judgment on the agency record. Judgment will enter accordingly.

/s/   Mark A. Barnett
Judge

Dated: <u>April 9, 2018</u>
New York, New York